UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOUGLAS SEARSON, Individually, and on
Behalf of All Others Similarly Situated, et al.

                       Plaintiffs,                    **REPORT AND**
                                                                           **RECOMMENDATION**
         -against-                              CV 07-3909 (DRH)(ARL)

CONCORD MORTGAGE CORP.,

                       Defendant.
------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      Before the court, up on referral from Judge Denis R. Hurley, are the plaintiffs' motions to amend their complaint and for conditional certification as a Fair Labor Standards Act ("FLSA") collective action. Upon review of the parties' submissions, the court respectfully recommends that the plaintiffs' motions be granted.

### BACKGROUND

      The following factual background is drawn from the parties' submissions and is set forth to aid in understanding the analysis contained herein. The defendant, Concord Mortgage Corporation ("Concord"), is a mortgage banker that was first licensed to do business in 1998. (Aff. of Richard Chiert at 1.) Initially, Concord operated as a small business with between six and twelve loan officers (*id.*), but over time Concord grew, opening approximately thirty branches throughout the United States. (Aff. of Richard Searson ¶ 3; *see* Aff. of Richard Chiert at 1-3.)

      In July 2005, Douglas Searson ("Searson"), the initial named plaintiff in this action, was hired by Concord and began working out of Concord's Bohemia, New York, branch office as a

part-time mortgage consultant. (Aff. of Searson ¶ 2, 4; Def.'s Mem. In Opp'n Mot. Proceed Collective Action at Ex. C.) Under his employment agreement, Searson was to work as a part-time employee, and his compensation was "limited to commissions earned upon the final closing of each mortgage." (*Id*.) According to Searson, Concord issued him daily and weekly production quotas and required Searson to work an average of 60-70 hours per week to meet those goals. (Aff. of Searson ¶ 10, 11.) Searson also alleges that Concord did not use any time keeping system to track the time worked by any of their loan officers. (*Id*. ¶ 15.) Searson contends that during his employment, he and his fellow loan officers were subject to a uniform, company-wide policy that failed to provide them a guaranteed weekly salary of $455.00 and denied them overtime compensation, in violation of the FLSA. (*Id*. ¶ 7, 10, 13, 16.)

On September 18, 2007, Searson filed suit against Concord on behalf of himself and all other similarly situated individuals, bringing a claim under both the FLSA and New York law for unpaid overtime. Since the filing of this lawsuit, twenty-two additional plaintiffs, consisting of both former part-time and former full-time mortgage consultants, have joined Searson. As of March 2008, Concord ceased operating as a mortgage bank and no long employs any loan officers. (Aff. of Richard Chiert at 1.)

The plaintiffs are now seeking to amend their complaint to: (1) add claims under the FLSA and New York law for a failure to pay a minimum wage, and (2) to join five individual defendants who served as Concord's executive managers.[1] Plaintiffs also seek to have this case conditionally certified as a § 216(b) collective action.

---

[1]Richard Chiert, Concord's President; Mitchell Chiert, Concord's Vice President, Treasurer, and Secretary; Edward Gilbride, Concord's Chief Executive Officer; Donald Chiert, Concord's Vice President; and Michael Gallagher, Concord's Vice President of Sales

# DISSCUSSION

**A. Motion to Amend**

The plaintiffs' motion to amend their complaint was filed on September 10, 2008, prior to the deadline of October 20, 2008 for parties to amend their pleadings. As the motion here was timely made, it must be determined under the liberal standard of Rule 15.[2]

Pursuant to the Federal Rules of Civil Procedure 15(a), "leave to [amend] shall be freely granted when justice so requires." "Only 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party...[or] futility of the amendment' will serve to prevent an amendment prior to trial." *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1002 (E.D.N.Y. 1995) (quoting *Foman v. Davis*, 371 U.S. 178, 182, (1962)).

The defendant opposes the plaintiffs' motion to amend, arguing that the plaintiffs' claims are futile and that allowing the proposed amendment would prejudice the defendant. Each of these arguments is addressed in turn.

**1. Futility**

An amendment is considered futile if the proposed claim would not survive a motion to dismiss made pursuant to Federal Rules of Civil Procedure 12(b)(6). *See Parker v. Columbia*

---

[2]Where a proposed amended complaint seeks to add new defendants, Rules 20 and 21 also govern. Rule 21 provides that an amendment to add a party to a lawsuit may be made by order of the court "at any stage of the action and on such terms as are just." *Sly Magazine, LLC v. Weider Publications, LLC,* 241 F.R.D. 527, 532 (S.D.N.Y. 2007). "Rule 20(a) allows persons to be joined as defendants if the plaintiff asserts against them a claim arising out of the same occurrence or transaction and any question of law or fact common to all of the defendants will arise in the action." *Ovadia Corp. v. Instyle Jewellery*, 2005 WL 1560536, *2 (S.D.N.Y. June 30, 2005). These requirements, which have not been addresses by either party, are easily met by the plaintiff for the same reasons set forth under Rule 15(a).

*Pictures Indus.,* 204 F.3d 326, 339-40 (2d Cir. 2000). Accordingly, in determining whether a proposed amendment would be futile, the claims must be construed in the light most favorable to the plaintiff. *See Forman,* 371 U.S. at 182. "To overcome objections of futility, the plaintiff must merely show that it has 'at least colorable grounds for relief.'" *Shiah Yih Industries Co., Ltd. v. Sitco Importing Co., Inc.,* No. 96-CV-0356, 1997 WL 304903, at *4 (S.D.N.Y. June 5, 1997) (quoting *Ryder Energy Distribution Corp. v. Merill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir.1984)).

The defendant argues that the plaintiffs' claims would be futile as to Richard Chiert, Mitchell Chiert, and Donald Chiert (collectively the "Chiert defendants") because they are not employers under the FLSA, and thus could not be subject to liability. The defendant supports this argument with an extensive analysis of the roles of each of these individuals played in the operation of Concord, citing to affidavits from each of the Chiert defendants. The defendant also argues that the plaintiffs have not provided any evidence to support their claim, and thus, the claim must fail.

The defendant's analysis is flawed. The defendant is essentially attempting to apply a summary judgment standard, instead of the liberal Rule 12(b)(6) standard that applies in this instance. Although the plaintiffs' did not submit affidavits, depositions, and other documentary evidence to support their claim, the plaintiffs' amended complaint does set forth allegations that the five named individual defendants were employers under the FLSA, that they were controlling officers of Concord, and that they were involved in Concords day-to-day business operation. (Pls.' Am. Compl. ¶ 10-14.) Because these allegations are presumed true, the plaintiffs have properly stated a claim upon which relief can be granted, and thus the plaintiffs' claims are not

futile.

### 2. Prejudice

In assessing the likelihood of prejudice, the court should consider whether the proposed amendment will "(i) require the opponent to expand significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993). Further, any prejudice demonstrated "must be balanced against the court's interest in litigating all claims in a single action and any prejudice to the movant which would result from a denial of the motion." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 148 (E.D.N.Y. 2007) (quoting *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996)).

The defendant argues that allowing the plaintiffs to amend their complaint would prejudice the defendant because the addition of the five individual defendants would require substantial additional discovery, a significant expenditure of expenses by all parties, and in the event the class is certified, the addition of the minimum wage claim would necessitate an individualized assessment of every opt-in plaintiff's compensation level to determine whether a minimum wage claim could be maintained. The court does not agree. At this point, the parties have only conducted preliminary discovery. As the defendant notes, the plaintiffs have yet to depose any of the individual defendants. (Def.'s Mem. in Opp'n Pls.' Mot. File Am. Compl. at 1.) As substantial discovery on the merits has yet to occur, any prejudice to the defendant is minimal, and thus is insufficient to defeat the plaintiffs' motion to amend. *See State Farm Mut. Auto. Ins. Co.*, 246 F.R.D. at 143 (holding that there was no undue prejudice where the case was

not close to a resolution and significant discovery on the merits had yet to occur).

Similarly, the defendant's argument that the addition of the minimum wage claim would greatly complicate the litigation fails to show undue prejudice. Plaintiff's additional claims arise from the same operative facts as the original claim, namely Concord's alleged company-wide employment policy. Although the addition of this claim may add some complexity, that prejudice does not outweigh the court's interest is resolving all of the parties' claims on the merits in a single action. In light of the liberal pleading standard, the court recommends that the plaintiffs' motion to amend the complaint be granted.

**B. Motion for Conditional Certification as a Collective Action**

The plaintiffs also seek conditional certification under the FLSA. Section 216(b) of Title 29 provides, in pertinent part:

> "any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation. . . . An action to recover the liability prescribed . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing . . ."

29 U.S.C. § 216(b). Pursuant to this statute, for a plaintiff to maintain a collective action, he need only show that the potential class members are similarly situated. *Sexton v. Franklin First Fin.*, No. 08-CV-4950(JFB)(ARL), 2009 WL 1706535, at *2 (E.D.N.Y. June 16, 2009); *Lewis v. Nat'l Fin. Sys., Inc.*, No. 06-CV-1308 (DRH)(ARL), 2007 WL 2455130, *3 (E.D.N.Y. Aug. 23, 2007). The plaintiff does not need to meet the numerosity, typicality, commonality, and representativeness requirements of Federal Rule of Civil Procedure 23, although the other class members must affirmatively opt-in to the lawsuit. *Lewis*, 2007 WL 2455130, *2.

6

In determining class certification under the FLSA, courts employ a two-stage process. *Sexton*, 2009 WL 1706535, at *3. In the first stage, the court looks to the pleadings and affidavits to determine whether the class members are similarly situated. *Id*. If so, the court will conditionally certify the class and permit notice to be sent to the proposed plaintiffs. *Id*. The "[plaintiff] can meet this burden by making a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). To make this showing, "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required." *Id*. In the second stage, the employer can moved to decertify the class if discovery reveals that the plaintiffs are in fact not similarly situated. *Id.* at *2.

Concord employed three types of loan officers: virtual loan officers ("VLOs"), part-time mortgage consultants, and full-time mortgage consultants. (Aff. of Richard Chiert at 1-3.) According to Concord, VLOs were loan officers who worked at home and in the field, only reporting to Concord's headquarters on an occasional basis. (*Id*. at 3.) VLOs served as Concord's "outside salesman."[3] (*Id*.) Part-time mortgage consultants were paid as independent contractors, and according to Concord, worked fewer than forty hours per week. (*Id*.) Some of these part-time mortgage consultants worked in the field, only coming to Concord's headquarters

---

[3]Concord's use of the term "outside salesmen" refers to an "outside sales employee." Under the FLSA, an outside sales employee is an employee (1) whose primary duty is making sales within the meaning of section 3(k) of the FLSA, or obtaining orders or contracts for services; and (2) who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty. 29 C.F.R. § 541. Outside sales employees are exempt from the FLSA pursuant to 29 U.S.C. § 213(a)(1).

to do "incidental work." (*Id.* at 4.) According to Concord, full-time mortgage consultants can be subdivided into two groups, those who performed field work and those who performed most of their work at headquarters. (*Id.*) The full-time mortgage consultants who performed field work acted much like part-time consultants, spending most of the day on the road and only coming to Concord's headquarters to do "incidental work." (*See id.*) The full-time consultants who worked at headquarters were organized into small groups led by a team leader. (*Id.*)

The plaintiffs have submitted seven affidavits to support their allegation that Concord loan officers were subjected to a uniform policy and practice of requiring work in excess of forty hours per week receiving overtime compensation or guaranteed minimum salary. (Pls.' Mem. in Supp. Mot. Proceed Collective Action at Ex. 2-8.) Five of those plaintiffs worked as part-time mortgage consultants; two of the seven plaintiffs were employed as full-time mortgage consultants. (*Id.* at Ex. 7 ¶ 7, Ex. 8 ¶ 8.) All seven plaintiffs state in their affidavits that every loan officer working at Concord shared the same job duties, the primary duty being to sell and produce residential mortgage loans. (*Id.* at Ex. 2 ¶ 8, 18, Ex. 3 ¶ 7, 14, Ex. 4 ¶ 8, 18, Ex. 5 ¶ 7, Ex. 6 ¶ 8, 18, Ex. 7 ¶ 9, Ex. 8 ¶ 9.) Plaintiffs also state that they regularly worked from 55-70 hours per week, that they observed the other loan officers in their respective branches working similar hours, and that their compensation, as well as the compensation of their fellow loan officers, was limited to commissions with no overtime pay or guaranteed salary. (*Id.* at Ex. 2 ¶ 6, 10, 16, Ex. 3 ¶ 5, 8, 12, Ex. 4 ¶ 6, 10, 16, Ex. 5 ¶ 5, 9, 15, Ex. 6 ¶ 6, 10, 16, Ex. 7 ¶ 7, 11, 17, Ex. 8 ¶ 7, 11, 17.) As for Concord's other branches, the plaintiffs state that in the course of their employment they became familiar with the uniform duties, policies, training, and directives that Concord applied to all of its loan officers, and that Concord uniformly administered the above

policy on all loan officers. (*Id.* at Ex. 2 ¶ 17, 18, Ex. 3 ¶ 13, 14, Ex. 4 ¶ 17, 18, Ex. 5 ¶ 17, 18, Ex. 6 ¶ 17, 18, Ex. 7 ¶ 18, 19, Ex. 8 ¶ 18, 19.) This claim of a company-wide policy is also supported by the terms of Concord's form employment contract for part-time employees, which expressly limits compensation to commission for mortgage sales. (Def. Mem. in Opp'n Mot. Proceed Collective Action at Ex. B-E.)

Concord responds that class certification is inappropriate because exemptions to the FLSA apply to many of the potential defendants. Specifically, Concord claims that the VLOs, some of the part-time mortgage consultants, and some of the full-time mortgage consultants fall under the outside sales exception of the FLSA and thus would be exempt from overtime and minimum wage protections. *See* 29 U.S.C. § 213(a)(1). Concord also argues that some of the full time loan officers who worked in the company's headquarters would be exempt as either administrative employees or as highly compensated employees. *See* 29 C.F.R. § 541.601. Citing to *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459 (S.D.N.Y. 2008), Concord argues that when a court finds that the defendant will likely succeed at trial in proving that employees are not entitled to recover under the FLSA, the court may refuse to authorize notice or postpone deciding the issue pending further discovery or motion practice.

Concord's reliance on *Amendola*, however, is misplaced. When the court in *Amenola* considered the merits of the defendant's defenses, it made the determination with the benefit of discovery, including the names and addresses of 350 employees, 6,000 relevant documents, and five witness depositions. *Amendola*, 558 F. Supp. 2d at 462. As substantial discovery has not begun in this case, such an analysis would be inappropriate. *See Sexton*, 2009 WL 1706535, at *5 (distinguishing *Amendola* based on the substantial discovery conducted in that case prior to the

9

determination of conditional certification). When conducting an initial determination for class certification, the court does not look to Concord's individual defenses because that inquiry is properly addressed in the second stage of certification, after discovery. *See Sexton*, 2009 WL 1706535, at *8; *Summa v. Hofstra Univ.*, No. 07-CV-3307(DRH)(ARL), 2008 WL 3852160, at *5 (E.D.N.Y Aug. 14, 2008) (holding that the court need not consider whether a portion of the putative plaintiffs are exempted from the FLSA, only whether those putative plaintiffs were subject to the alleged improper policy).

Concord also argues that the potential plaintiffs are not similarly situated based on differing job duties and work environments. Concord claims that the part-time and full-time mortgage consultants were not managed at the company-wide level, but were instead assigned to separate branches. These branches could assign different compensation rates to different consultants, and determine whether they would forward leads to part-time employees. Concord, citing to *Diaz v. Electronic Boutiques of America, Inc.*, No. 04-CV-840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005), argues that these variations, as well as the different FLSA exceptions that may apply, necessitate an individual, fact-intensive inquiry into each potential plaintiff's employment status, and as a result class certification would be inappropriate.

*Diaz* is not applicable to this case. In *Diaz*, the court was faced with two different types of employees each asserting a different wrongs: (1) wrongful classification as exempt, and (2) requiring non-exempt employees to work off the clock . 2005 WL 2654270, at *1. Here, the alleged policy applies to all loan officers, and because they all shared common job duties; determining whether they were misclassified as exempt does not require an detailed, individual, factual analysis. *See Sexton*, 2009 WL 1706535, at *6.

Although discovery may ultimately show that some part-time mortgage consultants and some full-time mortgage consultants fall into an exemption of the FLSA, or that employment policy was not company wide but set at the branch level, that possibility does not prevent conditional class certification at this time. The plaintiffs' affidavits, which include affidavits by both part-time and full-time mortgage consultants, set forth substantial allegations of a company-wide policy of denying overtime and minimum pay to loan officers, which are sufficient to support a finding that the part-time and full-time mortgage consultants are similarly situated. The plaintiffs sufficiently described their primary job descriptions, the method of receiving compensation, the defendant's lack of record keeping, among all of Concord's branches.

The plaintiffs have not, however, established that VLOs are similarly situated to the part-time or full-time mortgage consultants. The plaintiffs have simply set forth no facts or allegations which show that VLOs were subject to the same company-wide policy that affected the other loan officers. The court has no basis for finding that VLOs and mortgage consultants were similarly situated. *See Sexton*, 2009 WL 1706535, at *10.

Therefore, the court finds that the plaintiffs are similarly situated to Concord's part-time and full-time mortgage consultants, and the court recommends that conditional certification be granted as to these classes only.

**C. Notice to Potential Plaintiffs**

In their motion, the plaintiffs request that they be authorized to give notice by U.S. first class mail to all similarly situated persons employed by Concord as loan officers or other similarly titled positions from September 18, 2004[4] to the present. The plaintiffs have also

---

[4]September 18, 2004 is three years prior to the filing of the complaint.

submitted a proposed notice, and they request that the notice be approved for distribution.

Although notice to potential plaintiffs is not expressly provided for in the FLSA, "[t]he Second Circuit has recognized a district court's authority to order that notice be given to potential members of a plaintiff class in actions under [section 216(b)] . . . pursuant to the opt-in provisions of the FLSA." *Sexton*, 2009 WL 1706535, at *9 (quoting *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 335 (W.D.N.Y. 2008)). Because written consent from the opt-in plaintiffs is required, "it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, in order to ensure that the drafting and distribution of the notice is timely, accurate and informative." *Id.* (quoting *Rubery*, 569 F. Supp. 2d at 336).

The plaintiffs' suggested criteria for determining recipients, however, are overly broad. First, the plaintiffs' date of September 18, 2004 extends too far into the past. For willful violations under the FLSA, an action must commence within three years after the cause of action accrues. *See* 29 U.S.C. § 255(a). For an opt-in plaintiff who is not named in the complaint, the action commences when his written consent is filed with the court. *See* 29 U.S.C. § 256(b). To prevent inadvertently giving notice to persons whose claims are now bared by the statute of limitations, the cut-off date is typically three years prior to the issuance of the notice. *See Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372-73 (E.D.N.Y. 2008). Such a limitation is warranted here.

Second, plaintiffs' notice should be limited to only part-time mortgage consultants and full-time mortgage consultants as described above. *See Sexton*, 2009 WL 1706535, at *11 (limiting notice to only those types of loan officers that are similarly situated to the plaintiff).

12

Additionally, the proposed notice submitted by the plaintiff must be amended to include changes brought on by plaintiffs' amended complaint. Also, the language of the notice implies that potential plaintiffs must be represented by plaintiffs' counsel, Erik Langeland, and that the opt-in consent form must be forwarded to Mr. Langeland in order to join the suit. The notice must be amended so that it is clear to the potential plaintiffs that they have the option to retain Mr. Langeland, but can select any counsel of their choosing. *See id.* at *12. The language of the notice must also state that potential plaintiffs can join the suit by filing their opt-in consent form directly with the Clerk of the Court. *See id*.

The court therefore recommends that the plaintiffs be authorized to give notice by U.S. first class mail to all part-time mortgage consultants and full-time mortgage consultants employed by Concord from three years prior to issuance of the notice through the present, once the notice has been amended in accordance with the above direction.

### D. Production of Names, Addresses, and Telephone Numbers

In their motion, plaintiffs also request that the defendant be ordered to produce a computer-readable data file containing the names, addresses, and telephone numbers of the potential opt-in plaintiffs. This type of relief is often granted in connection with a conditional certification of an FLSA collective action, providing that such information is neither unduly burdensome or disruptive to the defendants' business operations. *Id.* at *13. Because this relief is not unduly burdensome or disruptive, the court recommends that the plaintiffs' motion be granted.

### RECOMMENDATION

For the above reasons, the undersigned respectfully recommends that the District Court:

(1) grant the plaintiffs' motion to amend the complaint; (2) grant the plaintiffs' motion to conditionally certify this case as a § 216(b) collective action; (3) permit the plaintiffs to provide notice amended as directed above, to all part-time and full-time mortgage consultants employed by Concord from three years prior to the notice to the present; and (4) direct the defendants to provide a computer-readable data file containing the names, addresses, and telephone numbers of the potential opt-in plaintiffs.

Any objections to this report and recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
August 31, 2009

**SO ORDERED:**

_____/s/_____
ARLENE ROSARIO LINDSAY
United States Magistrate Judge