UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------
DOUGLAS SEARSON, Individually, and
on Behalf of All Others Similarly Situated,

                       Plaintiffs,                 **MEMORANDUM AND ORDER**
                                                                       **07-CV-3909 (DRH) (ARL)**

       -against-

CONCORD MORTGAGE CORP. D/B/A
CMC DIRECT, RICHARD CHIERT,
MITCHELL CHIERT, DONALD CHIERT,
EDWARD GILBRIDE, and MARK
GALLAGHER,

                       Defendants.

----------------------------------------------------------X

**APPEARANCES:**

**For the Plaintiffs:**
**ERIK H. Langeland, P.C.**
500 Fifth Avenue, Suite 1610
New York, NY 10110
By:    Erik Harald Langeland, Esq.

**STEPHAN ZOURAS, LLP**
205 N. Michigan Ave., Suite 2560
Chicago, IL 60601
By:    James B. Zouras, Esq.
          Ryan F. Stephan, Esq.

**Hurley, Senior District Judge:**

       Plaintiffs, loan officers for the defendant Concord Mortgage Corp. d/b/a/ CMC Direct ("Concord"), bring this action seeking minimum wages and overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and New York Labor Law ("NYLL"). Defendants Edward Gilbride and Mark Gallagher ("defaulting defendants"), controlling officers of Concord, failed to answer plaintiffs' complaint, and on February 12, 2010, the Court entered default judgment against them but did not make findings as to damages because plaintiffs did not

seek a damages calculation at that time.  On May 15, 2013 after settling with the remaining non-defaulting defendants, plaintiffs moved for damages against the defaulting defendants.  The Court referred plaintiffs' motion to Magistrate Judge Lindsay, and on December 19, 2013, Judge Lindsay issued a Report and Recommendation ("R & R") denying plaintiffs' motion in its entirety.  Presently before the Court is plaintiffs' December 30, 2013 objection to Judge Lindsay's ruling.  For the reasons set forth below, the plaintiffs' motion is returned to Judge Lindsay for further analysis.

## BACKGROUND

The Court assumes familiarity with the facts and procedural history as set forth in Magistrate Judge Lindsay's Report and Recommendation.

## DISCUSSION

### I.     Legal Standard

Rule 72(b)(3) provides that "a district judge must determine de novo any part of [a] magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also* 28 U .S.C. § 636(b)(1)(B).  The Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  "The *de novo* review requires the district court neither to 'rehear the contested testimony' nor to 'conduct a new hearing on contested issues.' "  *Gutman v. Klein,* 2010 WL 4916722, at *1 (E.D.N.Y. Nov. 24, 2010) (quoting *United States v. Raddatz,* 447 U.S. 667, 674–75 (1980)).  Moreover, even on a *de novo* review, a district court will generally "refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance."  *Kennedy v. Adamo,* 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (quoting *Haynes v. Quality Markets,* 2003

WL 23610575, at *3 (E.D.N.Y. Sept. 22, 2003)) (internal quotation marks and alteration omitted).

## II. Discussion

*Judge Lindsay's Report and Recommendation*

In support of their motion, Plaintiffs submitted testimony from Searson and four opt-in plaintiffs stating that each worked an average of 60-70 hours per week. Magistrate Judge Lindsay explained that "[b]ased on this testimony, the plaintiffs have used the average of 65 hours a week to calculate the damages for all 79 opt-in plaintiffs." (R & R at 4.) Although Judge Lindsay accepted that average, she found fault with the calculation of damages owed to each plaintiff. To demonstrate the amount of damages due, plaintiffs submitted a spreadsheet containing seventy-four of the opt-in plaintiffs. For each plaintiff, the spreadsheet listed the number of hours worked per week (65 for each plaintiff), the number of weeks worked, and the damages due. The spreadsheet, however, included two columns labeled "weeks worked," and for each plaintiff the two columns contained different figures. Judge Lindsay noted that there was confusion as to what the two different "weeks worked" columns of plaintiffs' spreadsheet represented and that there was "no identification of the year(s) in which the weeks were worked." (R & R at 5.) Moreover, the court observed that "the spreadsheet [did] not reflect all of the [79] opt-in plaintiffs." (*Id*.) Finally, the court concluded that "given the deficiencies of documentation submitted, [it could not] be ensured that there [was] a basis for the damages specified in the default judgment," and it denied plaintiffs' motion for damages. (*Id*.) Plaintiffs object to Magistrate Judge Lindsay's recommendation "that no damages should be awarded." (Pls.' Mem. in Obj. ("Obj.") at 5.)

3

*Plaintiffs' Burden*

Generally, "[a]n employee suing under the FLSA has the burden of proving that he performed the work for which he was not properly compensated." *Hosking v. New World Mortgage, Inc.*, 570 Fed. App'x 28, 31 (2d Cir. 2014) (citing *Reich v. S. New England Telecommc'ns Corp.*, 121 F.3d 58, 66-67 (2d Cir. 1997)). Plaintiffs argue, however, that their ability to meet this burden was hampered by defendants' failure to "make, maintain and/or produce the required payroll and employment records" in accordance with § 211(c) of the FLSA and NYLL § 195(4). (Obj. at 2, 3.)

When an employer fails to keep adequate records in compliance with the FLSA and NYLL, an employee suing for lost wages may carry his burden by meeting the standard set forth in *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997). *Reich* states that absent adequate personnel records, plaintiffs can prove they were not properly compensated by "present[ing] the testimony of a representative sample of employees." *Reich*, 121 F.3d at 67. The plaintiffs, however, still "must produce sufficient evidence to establish that the employees have in fact performed work for which they were improperly compensated and produce sufficient evidence to show the amount and extent of that work 'as a matter of just and reasonable inference.' " *Id*. (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). "The burden then shifts to the employer to present evidence either of the precise wages paid or evidence to 'negat[e] the reasonableness of the inference to be drawn from the employee's evidence.' " *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 331-32 (S.D.N.Y. 2005). (quoting *Anderson*, 328 U.S. at 688). "New York law incorporates a similar standard," providing that "where an employer fails 'to keep adequate records, . . . the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and

4

wage supplements.' " *Id*. at 332; n. 3 (quoting N.Y. Lab. L. § 196-a) *see also Jiao v. Shi Ya Chen*, 2007 WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007) (discussing the burden shift under New York law). Of course, whereas here the defendants have defaulted and have not attempted to negate plaintiffs' evidence, it is not possible for them to meet this burden. Therefore, the Court's inquiry is limited to whether plaintiffs have met the burden set forth in *Reich*.

As mentioned above, in support of their claim, plaintiffs presented a spreadsheet "summarizing the total weeks worked and damages owed" to each plaintiff. (Zouras Decl. ¶ 3.) Plaintiffs state that they "based their calculations on Defendants' payroll and other employment records to the extent they exist[ed], and supplemented them with information acquired directly from members of the collective class." (*Id*. ¶ 4.) As plaintiffs explain further, "Plaintiffs' dates of employment were obtained through an investigation of the Defendants' limited employment records. Further, as those records [were] incomplete and inaccurate, they were supplemented by the opt-in forms completed by the Plaintiffs or Plaintiffs' declarations." (Obj. at 8.) Additionally, plaintiffs clarify that the first "weeks worked" column in the spreadsheet contains the number of weeks worked according to plaintiffs' opt-in forms ("the opt-in column"), and the second "weeks worked" column contains the number of weeks worked according to defendants' personnel records ("the personnel column"). (*Id*. at 10.) According to plaintiffs, the members of the collective class collectively worked a total of 2,814 work weeks for which they currently seek minimum and overtime wages. (Zouras Decl. ¶ 5.) Moreover, plaintiffs assert that based on the declarations submitted, they have sufficiently shown that each employee worked an average of 65 hours per week. Furthermore, using two multiplication formulas, plaintiffs

5

calculate that they are owed $2,206,851.27 in unpaid minimum and overtime wages.[1] (*Id.* ¶ 10.) To compute the total damages owed to plaintiffs including liquidated damages, plaintiffs "multiplied the amount of minimum wages and overtime [wages] due by two . . . to reach $4,413,702.53." (*Id.* ¶ 11.)

Even assuming that plaintiffs have sufficiently demonstrated through the declarations of Searson and four of the opt-in plaintiffs that each plaintiff worked an average of 65 hours per week, plaintiffs still have not presented sufficient evidence regarding the number of weeks plaintiffs worked for the Court to award damages to all plaintiffs. Although plaintiffs state that there are 79 opt-in plaintiffs, the spreadsheet contains figures for only 74 individuals. Additionally, although the plaintiffs have explained the purpose of the two "weeks worked" columns, they do not explain, in the case of a plaintiff who has a figure in both of those columns, which number was actually used to calculate damages.[2] Furthermore, plaintiffs have not provided sufficient evidence allowing the Court to reasonably infer the accuracy of the numbers in the opt-in column. Generally, the plaintiffs' opt-in forms indicate the period plaintiffs worked only by months and years. *Hosking*, 570 Fed. App'x at 32 (finding that plaintiff had not

---

[1] Plaintiffs' formula for unpaid minimum wages is: "Total number of workweeks during the statutory time period 'TWW' (x) unpaid minimum wage hours (40) per week 'HPW' (x) applicable rate(s) of pay 'ROP.' " (Zouras Decl. ¶ 6.)
 Plaintiffs' formula for unpaid overtime wages is: "Total number of workweeks during the statutory time period 'TWW' (x) unpaid overtime hours (25) per week 'HPW' (x) applicable rate(s) of pay 'ROP' (x) one-and-one-half overtime pay premium." (*Id.* ¶ 7.)
 Plaintiffs further explain that "[t]o the extent payroll records exist[ed] showing actual commission payments received by Plaintiffs during any payroll period, Plaintiffs used those amounts to calculate each individual's minimum wage and corresponding overtime rate," though they have not included any such payroll records in their submission. (*Id.* ¶ 8.) "Otherwise, Plaintiffs used the New York minimum wage rate in effect during the relevant time period." (*Id.*)

[2] It seems that plaintiffs may have used solely the personnel column to calculate damages since only that column contains the total number of hours worked, i.e., 2814. If so, it is not clear to the Court what role the figures in the opt-in column played in plaintiffs' calculation.

6

presented sufficient evidence where opt-in forms indicated only the months and years of employment). Even if the Court were to approximate the weeks worked based on these forms, a more serious problem exists in that in some cases, the number of weeks worked recorded for a particular plaintiff in the opt-in column does not match the number of weeks worked stated in that plaintiff's opt-in form. For example, in the case of Kinley Dutton, Dutton's opt-in form does not contain any dates of employment, but the opt-in column states that Dutton worked for 33 weeks.[3] In addition, Jean Oriol's opt-in form states that Oriol worked from October of 2006 until January of 2007, a period of approximately 4 months (approximately 16 weeks), however the opt-in column indicates that she worked 24 weeks.

Although "not all employees need testify in order to prove FLSA violations or recoup back-wages, the plaintiffs must present sufficient evidence [for the Court] to make a reasonable inference as to the number of hours worked by the non-testifying employees." *Grochowski v. Phoenix Construction*, 318 F.3d 80, 88 (2d Cir. 2003). Moreover, the Court is not permitted to "just accept [plaintiffs'] statement of the damages." *Transatl. Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Here, plaintiffs have not presented sufficient documentation such that the Court can reasonably infer that its total damages calculation is appropriate. The Court, however, will permit plaintiffs to submit additional documentation to Judge Lindsay to the extent it would cure any of the above-mentioned deficiencies. Accordingly, the motion is referred back to Magistrate Judge Lindsay to set a time frame for plaintiffs to submit such materials for her review. Additionally, plaintiffs urge the Court "not to deprive the

---

[3] The plaintiffs submit a declaration of Kinley Dutton, which indicates that Dutton worked approximately 10 months (forty weeks). It is not clear from this declaration or from the blank opt-in form how plaintiffs reached the figures in the opt-in column and personnel column of the spreadsheet, indicating that Dutton worked thirty-three and thirty-five weeks respectively.

entire class of damages," but if necessary to "eliminate, from the damages calculations, those Plaintiffs for whom a concern existed." (Obj. at 15.) Regarding this request, Magistrate Judge Lindsay should also consider whether plaintiffs have submitted sufficient documentation demonstrating the wages due to any of the individual plaintiffs and issue a Report and Recommendation as to whether plaintiffs have proven any damages to a reasonable certainty.

## Conclusion

For the foregoing reasons, plaintiffs' motion for damages is returned to Magistrate Judge Lindsay for further analysis.

**SO ORDERED.**

Dated: Central Islip, New York
       December 22, 2014                      _____/s/_____
                                              Denis R. Hurley
                                              United States District Judge